## W. H. HILL v. MRS. S. E. HOUSER.

Decided June 17, 1908.

**1.—Breach of Promise—Defamation of Character—Joinder of Actions.**

Allegations, in a suit for breach of promise of marriage, of statements by defendant derogatory to plaintiff's character, held not to present a misjoinder of actions on contract and in tort, but to relate to the measure of damages in the action on contract, and not to be subject to demurrer,

**2.—Evidence—Harmless Error.**

The admission of evidence from a third party of conversations with plaintiff, not in defendant's presence, was not ground for reversal where the same matter was also brought out by defendant in his cross-examination of plaintiff.

**3.—Evidence—Promise of Marriage—Letters—Notice to Produce—Argument of Counsel.**

In a suit for breach of promise of marriage, letters of plaintiff to defendant, if containing matter relevant to the issue, might be admissible in evidence; and where they were shown to be in possession of defendant's counsel, who, upon notice to produce them given in the course of the trial, declined to do so, the refusal to produce was a proper subject for comment by plaintiff's counsel in argument.

**4.—Promise of Marriage—Pleading—Circumstantial Evidence.**

Allegations of an express undertaking to marry, not stated to be in writing, may be proved by circumstantial evidence, and a proposal of marriage and its acceptance would constitute such express contract.

**5.—Promise of Marriage—Time of Performance—Pleading and Proof.**

Plaintiff relying on a promise of marriage with no date set, and also a subsequent agreement fixing the date, it was proper for the court to instruct the jury that the promise, without date for performance, implied an agreement to marry within a reasonable time.

**6.—Pleading and Evidence—Harmless Error.**

Where plaintiff's pleading and evidence showed an unconditional agreement to marry and denied any agreement releasing the defendant therefrom, and defendant's, a conditional promise from which he had been released, neither asserting a renewal after release, a charge that if the agreement had been annulled and was afterwards renewed defendant would be bound thereby, was not ground for reversal, it being improbable that the jury were misled thereby.

**7.—Punitory Damages—Harmless Error.**

Error in the charge relating to punitory damages was harmless to defendant where none were recovered.

**8.—Requested Instruction—Evidence.**

A requested charge limiting the purpose for which the jury could consider the testimony of certain witnesses was rightly refused where some of their testimony could properly be considered for other purposes.

**9.—Breach of Promise of Marriage.**

Evidence considered and held to support a recovery for breach of promise of marriage.

Appeal from the District Court of Llano County. Tried below before Hon. Clarence Martin.

*Flack & Dalrymple* and *Dayton Moses,* for appellant.—Two separate and distinct causes of action for damages, one based upon the breach of a special contract, the other upon a tort, can not be joined in the same action. Stewart & Co. v. Gordon, 65 Texas, 344; Frey v. Ft. Worth & R. G. R. Co., 86 Texas, 465.

Letters and notes written by a party are not admissible in his behalf, as they are self-serving declarations. If the plaintiff was entitled to the contents of such letters and notes as evidence in her behalf, notice to produce them should have been served on defendant, and, if defendant had refused to produce them, then the plaintiff could have resorted

to secondary evidence to prove their contents. McCormick Harvester & Machine Co. v. Millett, 29 S. W., 80.

It is error for the trial court to charge upon an issue not made by the pleadings. Loving v. Dixon, 56 Texas, 75; Markham v. Carothers, 47 Texas, 22; Neblett v. McGraw, 91 S. W., 309; Woldert v. Veltman, 83 S. W., 224.

The trial court should not submit to the jury a charge upon an implied contract when the pleadings declare upon an express contract. Shiner v. Abbey, 77 Texas, 1; Stanford v. Wright, 92 S. W., 269; Texas & P. Ry. Co. v. French, 86 Texas, 96; Ft. Worth & D. C. Ry. Co. v. Measles, 81 Texas, 478; Ballard v. Shea, 121 Ill. App., 135.

The charge of the court must agree with the pleadings and proof, and should always be framed so as to meet the issues presented by them. Dodd v. Arnold, 28 Texas, 98; Cook v. Dennis, 61 Texas, 246; Austin v. Talk, 20 Texas, 165; Andrews v. Smithwick, 20 Texas, 111; Houston & T. C. Ry. Co. v. Rider, 62 Texas, 267; International & G. N. Ry. Co. v. Underwood, 64 Texas, 463; International & G. N. Ry. Co. v. Tisdale, 81 Texas, 347; Houston & T. C. Ry. Co. v. Tierney, 72 Texas, 312.

The court should not submit, in his charge to the jury, an element of special damages, unless a proper basis for such damages is found in both the pleadings and evidence. San Antonio & A. P. Ry. Co. v. Robinson, 73 Texas, 277; Ft. Worth & D. C. Ry. Co. v. Measles, 81 Texas, 478; Houston City Ry. Co. v. Richart, 27 S. W., 921; Texas & Pac. Ry. Co. v. Bigham, 30 S. W., 254; Campbell v. Cook, 86 Texas, 632; Gulf, C. & S. F. Ry. Co. v. Sparger, 11 Texas Civ. App., 82.

*McLean & Spears,* for appellee.—Where the facts show a breach of contract, and also that the breach is of such a character as to authorize a suit as for a tort, all the damages recoverable for the thing done, either in an action *ex contractu* or *ex delicto,* may be recovered in the same suit. Clark v. Reese, 29 Texas Civ. App., 619; Stuart v. W. U. Tel. Co., 66 Texas, 583; Hooker v. Fitzenrieter, 76 Texas, 277.

If it was error to admit the evidence of Oatman, complained of in appellant's second assignment of error, it was harmless, because the same evidence was brought out by appellant on the cross-examination of Mrs. Houser. International & G. N. Ry. Co. v. Kindred, 57 Texas, 500; Galveston, H. & S. A. Ry. Co. v. Puente, 30 Texas Civ. App., 246; Green's Texas Digest, 1073 (h).

When plaintiff set up an express contract, and the evidence of both plaintiff and defendant show a proposal and an acceptance, the court's charge on an implied contract was immaterial and harmless. Carter v. Cross, 44 Texas, 548; Shumard v. Johnson, 66 Texas, 74; Western U. Tel. Co. v. Evans, 5 Texas Civ. App., 57; Houston & T. C. R. R. Co. v. Hardy, 61 Texas, 232; Woods v. Durrett, 28 Texas, 443.

A promise to marry, where no definite time is fixed, implies that it is to be performed within a reasonable time. Clark v. Reese, 26 Texas Civ. App., 619; Edge v. Griffin, 63 S. W., 148; Blackburn v. Mann, 85 Ill., 222; Grubbs v. Pense, 73 S. W., 785.

Plaintiff alleged an express unconditional contract, and defendant answered that, if there was a contract, it was conditional upon particular contingencies, which did not happen, and further, that, if there was

a contract, plaintiff released him from liability thereunder, and neither party pleaded a renewal of the contract, nor was there any evidence of renewal; both parties testified that there was a contract entered into between them, but the evidence was conflicting upon the issues of whether the contract was conditional or unconditional, and as to whether or not it was released by plaintiff; the jury found for the plaintiff; in such a state of case the court's charge upon a renewal of the contract was immaterial and harmless. Carter v. Cross, 44 Texas, 548; Shumard v. Johnson, 66 Texas, 74; Western U. Tel. Co. v. Evans, 5 Texas Civ. App., 57; Houston & T. C. R. R. Co. v. Hardy, 61 Texas, 232; Woods v. Durrett, 28 Texas, 443.

KEY, Associate Justice.—The nature and result of this suit is stated as follows in appellant's brief:

"This suit was instituted by the appellee against the appellant upon an alleged breach of a promise of marriage contract. On the 21st day of May, 1906, the appellee filed her amended original petition in this cause (the petition upon which the case went to trial), wherein she alleged that, 'during the spring of the year 1905, the exact date of which is not now remembered by plaintiff, at the earnest and persistent solicitation of defendant (appellant), plaintiff (appellee) accepted his proposal of marriage with her, and the defendant and plaintiff then and there agreed and promised to marry each other;' that there was no particular date set for the celebration of such marriage, but the same was to be celebrated within a reasonable time, before the first day of October, 1905, 'on a date which plaintiff does not now remember;' that the appellant 'promised and agreed he would marry her some day during the month of October, 1905, which day was not specifically named by defendant, and plaintiff then and there agreed and promised to marry defendant on any day during said month, and at all times during said month held herself in readiness, and was ready and willing to marry him, but the defendant refused to marry plaintiff at any time during said month, but agreed and promised that he would marry her on or about the 25th day of December, 1905, to which date plaintiff agreed, and on said last-named date she was ready and willing to marry defendant, as she had agreed and promised to do.' Then follow allegations of appellant's refusal to marry appellee, and an alleged breach of the said marriage contract as above set out, together with allegations as to appellant's actions towards appellee prior to and during the pendency of their engagement, by which he won the affections and confidence of appellee, and praying for $5,000 damages. Also allegation to the effect that, during the pendency of said engagement, and subsequent to the alleged breach thereof by appellant, he did, with the specific intent to injure, shame and disgrace appellee, say and represent to J. H. Barnes, and divers other good people of Llano County, that he had had sexual intercourse with her; that such representations so made by appellant were false, and that same were maliciously and wickedly made by appellant to injure and utterly destroy the good name and reputation of appellee, and to intimidate her and prevent her from prosecuting this suit. This is followed by a general prayer for damages in the sum of $10,000.

"On the same day, May 21, 1906, the appellant filed his amended original answer, consisting, first, of a general exception; second, a general denial; third, a special denial of all of appellee's allegations as to the contract or agreement to marry, etc.; fourth, a special answer, wherein he says if any contract or agreement ever existed between appellant and appellee to marry the same was based upon the happening of future conditions, circumstances and contingencies, to the effect that they could not and would not marry so long as each of them had certain children dependent upon them for support, maintenance and education, both having been previously married and each possessing children by such previous marriages; specifically, so long as the eldest children of both parties were with them, or either of them, and were so dependent upon them or either of them, they would not and could not marry; further alleging that all of said children were still living with and dependent upon them, respectively, for support, maintenance and education; that said contract, if any, was entirely conditional, and that such conditions had not been vacated, etc. Appellant alleged that if such contract or agreement to marry ever existed, as charged by plaintiff, that she, on the —— day of February, 1906, voluntarily, in writing, released the defendant from the same, and that same was, by mutual consent, annulled and canceled; sixth, that if any such contract or agreement to marry ever existed, as alleged by plaintiff, and that he breached same, then he alleges he·was forced to do so by the improper acts and conduct of appellee with other men, same being such as would cast suspicion on her reputation and character as a virtuous and modest woman, this being followed by specific allegations; and seventh, that if such contract or promise of marriage ever existed, as alleged by plaintiff, the same was not to be performed within the space of one ˙year from the making thereof; that same˙ was not reduced to writing and signed by them, hence was in contravention of the statute of frauds, therefore void.

"The case was tried before the court with a jury, beginning on December 15, 1906, and ending December 19, 1906, resulting in a verdict for the plaintiff for $2,500 actual damages.

"The appellee testified she was a widow forty-one years of age, having been twice married, her last husband dying on the 29th day of April, 1903; that she was compelled to rely upon her personal efforts for support of herself and five children, the oldest being a girl, now seventeen years old. In December, 1904, she applied to several merchants in Kingsland, Llano County, Texas, where she was living, for employment. Failing to secure employment she went to the appellant, who was engaged in the mercantile business in said town, stating to him her condition, and that she had failed to secure employment from any of the other merchants, and he gave her a position as clerk and bookkeeper in his store. After she had been working for him about one month he became very attentive to her, showing her many little kindnesses, courtesies, etc. That he seemed to be very devoted to her and finally made love to her; that she told him it was no use; she did not wish to disappoint him; that she was engaged to another gentleman, Mr. J. F. Montgomery. He said that engagement could be broken off. She said further: 'We were continuously together in the store, and, as time advanced, I became

very fond of Mr. Hill. In the course of time I broke off the engagement with Mr. Montgomery;' that in June, 1905, she and appellant became engaged to marry, appellant promising to marry her the following October; that when October came appellant postponed the date of marriage until the 25th of December, 1905, and then again postponed it without fixing any particular date, and while appellant has never absolutely refused to marry her, he had postponed it indefinitely, and she had thus been forced to the conclusion that he was trifling with her, and did not intend to carry out his contract and obligation to marry her. She gives a lengthy detail as to all matters transpiring before and during the engagement; as to the part played by appellant in breaking off the engagement between her and Mr. Montgomery, and as to the acts and conduct of appellant prior and subsequent to the alleged contract to marry. She said, however, that the agreement to marry was positive and absolute; that it was made during the month of June, 1905, on a Sunday evening, in the presence of her mother, who was called in by appellant to witness the agreement, and that the time was fixed for October, 1905.

"Several witnesses testified to conversations with appellant wherein his statements are claimed to be corroborative of the appellee's testimony with reference to the existence of the contract to marry between appellant and appellee. The appellee introducd testimony tending to show her good reputation before she became engaged to appellant, and that her associations with him had clouded that reputation to a certain extent, and that she had been dismissed from the Baptist Church at Kingsland on account of her associations with appellant. Also some testimony tending to show that appellant had made derogatory remarks about appellee after she had instituted this suit.

"The appellant testified in his own behalf, and admitted the engagement to marry, but claimed that it was based upon certain conditions which still obtained, these conditions being: 'That they would not marry, and could not marry, so long as their two eldest children were living with each or either of them and dependent upon them or either of them for support, maintenance and education,' both appellant and appellee having been twice married, and each having children by each of such marriages, the appellant having five and the appellee having five. He also testified that, some time during the month of February, 1906, appellee voluntarily released him from their engagement, and the same was mutually dissolved and canceled, and that the understanding between them was that they were to remain good friends, and that the first intimation that he had of the claim of appellee that their engagement was unconditional was when the citation was served upon him in this cause.

"Several witnesses testified to conversations with the appellee, in which she made statements corroborative of appellant's contention that the engagement was based upon the conditions alleged by him.

"John C. Oatman, Esq., attorney at the Llano bar, testified that the appellee consulted him during the month of August, 1905, with reference to the propriety of bringing a breach of promise of marriage suit against appellant, and that she told him, Oatman, that there had been no day set for the marriage.

Appellee testified, when called by the appellant, that she left Kingsland during August, 1905, and went to Dallas for the purpose of securing a position with Sanger Bros., merchants of that place, and, failing to secure a position with them, she returned to her home in Kingsland.

Appellant testified that he received a large number of letters and notes from appellee during the pendency of their engagement, the most of which were then in the possession of his attorneys."

Under the first assignment of error, which complains because the defendant's general demurrer to the plaintiff's petition was overruled, appellant presents the proposition that two separate and distinct causes of action for damages, one based upon a breach of contract and the other upon a tort, can not be joined in the same action. The correctness of that proposition, and whether or not the question can be raised by a general demurrer, need not be decided in this case. The trial court construed the plaintiff's petition as presenting but one cause of action, viz., breach of contract, and treated the tortious conduct charged against the defendant in the plaintiff's petition as relevant only to the measure of damages for breach of the contract, and not as setting up a distinct cause of action. We are inclined to think that a correct construction was placed upon the petition, but, if not, then no harm resulted to the defendant. It is not denied that the petition stated a cause of action for damages for breach of contract, and that was the only cause of action that the charge of the court submitted to the jury. This being the case, no injury resulted to the defendant, even if the petition set up a cause of action based upon a tort.

The second assignment of error complains because the plaintiff and John C. Oatman were permitted to relate to the jury a conversation which occurred between them, the defendant not being present. The record shows that the defendant objected to the testimony of Oatman, but does not show such objection to the plaintiff's testimony upon that subject. On the contrary, it appears that the defendant asked the plaintiff on cross-examination to detail the conversation between herself and the witness Oatman, which she did, there being no material difference between her testimony and that given by Oatman. The defendant having proved by the plaintiff the same facts which he objected to the witness Oatman testifying to, he is not in a position to complain of the testimony given by the latter witness.

The third, fourth and fifth assignments of error have been abandoned.

The sixth, seventh, eighth and ninth assignments relate to the action of the court in compelling the defendant, while on the stand, to answer questions propounded by the plaintiff concerning letters received by him from her during the pendency of their engagement. On cross-examination he was asked if he had not received a great many letters and notes from the plaintiff during their engagement, and if he was willing to produce them as evidence on behalf of the plaintiff. His first answer was: "I refer you to my attorneys." Being required to answer more specifically, he stated that he was unwilling to produce such letters and notes and furnish them as evidence in plaintiff's behalf, unless advised to do so by his attorneys. Thereupon, and against the objection of the defendant, the plaintiff's counsel, in open court, and in the presence of the jury, made demand upon the defendant's counsel for the production

of the letters and notes referred to. The defendant's counsel refused to produce them, claiming that their contents were in nowise admissible for the plaintiff. The failure to produce the letters and notes was not referred to in the opening argument for the plaintiff, but the defendant's counsel were notified before the conclusion of their argument that the plaintiff's counsel would discuss that matter in his closing argument. This he did, and commented upon the failure of the defendant to produce the letters and notes, saying, among other things, that the jury could infer, from such failure, that they contained damaging evidence to the defendant. Thereupon the defendant's counsel prepared, and requested the court to give to the jury, a special instruction not to consider the argument referred to, which instruction was refused.

The letters and notes referred to may have contained statements which would have rendered them admissible in evidence. For instance, the plaintiff may have written to the defendant: "You know you promised to marry me sometime during the month of October, 1905, and again promised to marry me on the 25th day of December, 1905. Answer, and say if this statement is not true." Now, if the plaintiff made any such statement to the defendant, either oral or in writing, it was permissible for her to prove that she made the statement, and if the defendant made no reply to it his silence would be almost equivalent to an admission of the truth of plaintiff's statement.

In Vanderpool v. Richardson, 52 Mich., 338, in an opinion by Judge Cooley, in a case like this, it was expressly held that letters written by the plaintiff to the defendant were admissible in evidence. We do not think there is any merit in the contention that notice to produce the letters should have been given before the case went to trial. The record indicates with reasonable certainty that the letters and notes were in the possession of the defendant's attorneys, were readily accessible, and could have been produced in a few minutes. This being the case, prior notice to produce was not necessary. (Elliott on Evid., section 1420.) Hence we conclude that the plaintiff's counsel had the right to make to the jury the argument complained of, and that no error was committed by the court in the several rulings complained of.

Under the tenth, eleventh and thirteenth assignments of error it is contended that the trial court committed error by instructing the jury that a contract of marriage may be established either by express proof of the agreement or by proof of circumstances from which it may be reasonably inferred, the contention being that the plaintiff based her suit upon an express contract only, and therefore it was error to submit to the jury any issue as to an implied contract. It is not stated in the plaintiff's petition that the contract sued on was in writing or was an express contract. She alleges that she accepted his proposal of marriage, and that they then and there agreed and promised to marry each other. She does not allege that, in express words, they agreed and promised to marry, and the defendant's proposal of marriage, and her acceptance thereof, would constitute an implied promise of marriage. Hence the assignments under consideration are overruled.

The twelfth and sixteenth assignments of error are addressed to so much of the charge of the court as instructed the jury that, if there was a contract of marriage, and no time fixed therefor, the law would pre-

sume a contract of marriage within a reasonable time; the contention is that the plaintiff alleged in her petition specific dates upon which the marriage was to be performed, and therefore that the question of the failure to perform the contract within a reasonable time was not involved in the case. The plaintiff alleged that when the contract was first made no time was designated for the celebration of the marriage, but that the same was to be celebrated within a reasonable time. In other words, the plaintiff's petition charges that, insofar as the question of time was concerned, there were three contracts, to wit: one to marry within a reasonable time, another during the month of October, 1905, and the other about the 25th day of December, 1905, and it alleges that the defendant breached all of them. We think the pleadings presented the question of the defendant's failure to perform within a reasonable time.

The fourteenth and fifteenth assignments predicate error upon so much of the charge of the court as presents, for the consideration of the jury, the question of renewal of the contract of marriage. The defendant averred in his answer that, if any contract of marriage was .made, the same had been annulled by mutual consent, and the plaintiff had released him therefrom. The plaintiff, by supplemental petition, denied that the contract had been annulled, and that she had released the defendant, but did not allege that, if such was the fact, that thereafter another contract of marriage had been made. The court instructed the jury that if there was a contract of marriage, which was canceled and annulled, and thereafter the parties became reconciled, and renewed the original agreement, and agreed to perform the marriage contract originally existing between them, then the defendant would be bound to perform the original contract. Both parties admit that there was no testimony tending to show a renewal of the contract. The plaintiff testified that there was an absolute and unconditional contract of marriage. The defendant, testifying in his own behalf, admitted the existence of a marriage contract, but said that it was conditional, and that the performance by either party was dependent upon conditions which had not arisen. He also testified, in substance, that whatever contract of marriage ever existed had, by mutual agreement, been canceled. The plaintiff, in her testimony, denied the existence of an agreement to cancel; and it seems, from the admissions in the briefs, that there was no testimony tending to show a renewal of the contract, if it had in fact been canceled. This being the case, while it may have been error for the court to submit to the jury any question in reference to a renewal of the contract, we do not believe the jury could have been misled by the charge, and therefore hold that the case should not be reversed on that account. (Woods v. Durrett, 28 Texas, 443; Carter v. Eames, 44 Texas, 548; Shumard v. Johnson, 66 Texas, 74.)

The seventeenth and eighteenth assignments of error complain of the court's charge upon the subject of punitory damages. The jury found for the defendant upon that issue, and awarded to the plaintiff actual damages only. In view of this result it is immaterial whether the charge of the court stated the law correctly upon that branch of the case.

The nineteenth assignment of error complains of the refusal of a requested instruction directing the jury not to consider the testimony of Mr. Hornberger and certain other witnesses as to statements made by the

defendant subsequent to the filing of this suit, except for the purpose of determining the motive of the defendant in breaching the contract of marriage. This instruction was properly refused, because some of the testimony referred to, and especially some of Mr. Hornberger's testimony, tended to prove the existence of the contract of marriage as alleged by the plaintiff.

The twentieth and last assignment assails the verdict of the jury. While there was conflict in the testimony on some of the material questions, that submitted on behalf of plaintiff amply supports the verdict. Hence we find, as conclusions of fact, and in support of the verdict, that the contract of marriage was made and breached, as alleged in the plaintiff's petition, and that, as a direct result of the breach of the contract, the plaintiff has sustained actual damages to the extent of $2,500, the amount awarded her by the verdict. It may be that it would have been unwise, as stated by the defendant, for him, with a family of five children, to have married the plaintiff with a like number of children; but a jury of his peers, upon testimony amply sufficient, have found that he promised to do so, and for a breach of that promise the law declares he must respond in damages. The contract was breached under circumstances which made it very distressing and harmful to the plaintiff. In fact, it is not contended that the verdict is excessive.

On the whole, our conclusion is that no reversible error has been suggested, and therefore the judgment is affirmed.

Writ of error refused.